[Cite as *Armatas v. Aultman Health Found.*, 2016-Ohio-7316.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STEVEN A. ARMATAS, | : | | JUDGES: |
| | : | | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellant | : | | Hon. W. Scott Gwin, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| AULTMAN HEALTH FOUNDATION | : | | Case No. 2016CA00130 |
| | : | | |
| and | : | | |
| | : | | |
| RICHARD S. MILLIGAN, ESQ., | : | | |
| | : | | |
| Defendants - Appellees | : | | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
of Common Pleas, Case No. 2015-
CV-02003

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        October 11, 2016

APPEARANCES:

For Plaintiff-Appellant

STEVEN A. ARMATAS
7690 Bucknell Circle N.W.
North Canton, Ohio 44720

For Defendant-Appellee Aultman
Health Foundation

STEPHAN C. KREMER
KATIE LYNN ZORC
Reminger & Co. LPA
80 South Summit Street
Akron, Ohio 45202

For Defendant-Appellee Richard S.
Milligan, Esq.
ORVILLE L. REED, III
DAVID W. HILKERT
400 Courtyard Square

Stark & Knoll Co. L.P.A.
3475 Ridgewood Road
Akron, Ohio 44333

*Baldwin, J.*

**{¶1}** Plaintiff-appellant Steven A. Armatas appeals from the November 23, 2015 Order and June 6, 2016 Judgment Entry of the Stark County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 31, 2014, Alexander Armatas, appellant's father, passed away while being treated at Aultman Hospital after suffering an earlier cardiac episode. On November 24, 2014, appellant, who is an attorney, had submitted a "Grievance" letter outlining his concerns regarding his father's medical care to Aultcare MAP (Medicare Advantage Plan) and Aultman PAG (Patient Advocacy Group). Aultcare MAP investigated the grievance and informed appellant that the results were confidential. Appellant never received a reply from PAG. As a result, appellant went to Aultman Hospital to inquire about his grievance filed with PAG. Appellant was told to contact appellee Milligan, who was the hospital's outside counsel.

**{¶3}** In an email dated May 29, 2015, Mark Rose, Senior Vice–President of Legal Affairs of the Aultman Health Foundation and its Subsidiaries and Related Entities, informed appellant that he was not to contact anyone from Aultman Hospital and that, as an attorney, he needed to abide by ethical obligations required by Ohio law. Mr. Rose told appellant to contact appellee Milligan. Appellant sent Mr. Rose a response, explaining that his analysis of the Ohio Rules of Professional Conduct for Attorneys was incorrect.

**{¶4}** In a letter dated June 9, 2015, appellee Milligan informed appellant that any further communications concerning appellee Aultman Health Foundation and its related

entities should be done through him. Appellant responded to appellee Milligan via a letter dated June 18, 2015, informing appellee Milligan that Professional Conduct Rule 4.2 did not apply to

him in a personal matter related to his own father, and submitted a copy of the letter to the Stark County Bar Association (hereinafter "SCBA"). The SCBA referred the matter to the Office of Disciplinary Counsel (hereinafter "ODC"). By letter dated August 19, 2015, the ODC concluded appellee's Milligan's conduct did not violate any of the ethics codes.

{¶5} On September 29, 2015, appellant filed a complaint for declaratory judgment against appellees Aultman Health Foundation and Milligan. Appellant sought an opinion about Professional Conduct Rule 4.2 and his rights to interview certain on-management Aultman Hospital employees. He also sought injunctive relief, punitive damages, attorney fees, and costs.

{¶6} On October 15, 2015, appellee Milligan filed a Civ.R. 12(B)(6) motion to be dismissed from the case. Appellant filed a brief in response on October 28, 2015, and appellee Milligan filed a reply brief on November 9, 2015. On November 20, 2015, appellant sought leave to file a surreply brief. By orders filed November 23, 2015, the trial court denied the leave and granted appellee Milligan's Motion to Dismiss, finding that he had acted in good faith on behalf of his client(s) and was therefore immune from the action.

{¶7} Appellant then appealed. Pursuant to an Opinion filed on April 25, 2016 in *Armatas v. Aultman Health Foundation, et al.*, 5th Dist. Stark No. 2015CA00225, 2016-Ohio-2715, this Court dismissed appellant's appeal for lack of a final appealable order.

{¶8} On May 5, 2016, appellant filed a "Motion for Civ.R. 54(B) Certification of the Trial Court's November 23, 2015 Order Dismissing Attorney Milligan as a Party in the Action; or, in the Alternative, Motion for Reconsideration of Such Order." Appellant, on May 10, 2016, filed a Motion for Release of Hospital Records.

{¶9} Appellee Aultman Health Foundation, on May 11, 2016, filed a reply in support of its Motion to Dismiss appellant's complaint pursuant to Civ.R. 12(B)(6), which had been filed on November 16, 2015 and had been stayed pending appeal. Appellee Milligan, on May 13, 2016, filed a brief in opposition to appellant's Motion for Certification. The trial court, pursuant to an Order filed on May 16, 2016, granted appellant's Motion for Release of Hospital Records.

{¶10} A hearing on appellee Aultman Health Foundation's Motion to Dismiss was held on June 6, 2016. The trial court, at the hearing, indicated that it was not satisfied that there was a justiciable controversy in this matter so as to permit a declaratory judgment. As memorialized in a Judgment Entry filed on June 6, 2016, the trial court granted appellee Aultman Health Foundation's Motion to Dismiss and dismissed all of appellant's claims against such appellee.

{¶11} Appellant now raises the following assignments of error on appeal:

{¶12} "I. THE TRIAL COURT ERRED IN DISMISSING AHF AND ATTORNEY MILLIGAN AS DEFENDANTS IN THIS MATTER BY FAILING TO RECOGNIZE A DECLARATORY JUDGMENT ACTION, AS ENACTED BY THE OHIO LEGISLATURE, IS AN APPROPRIATE AND SUITABLE MECHANISM TO SETTLE AND AFFORD

RELIEF FROM UNCERTAINTY AND INSECURITY REGARDING THE PROPER INTERPRETATION OF A RULE OF LAW."

{¶13} "II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' RESPECTIVE MOTIONS TO DISMISS BY PERMITTING BOTH AHF AND ATTORNEY MILLIGAN TO (I) IGNORE THEIR ORIGINAL REASON FOR THREATENING PLAINTIFF WITH A LAWSUIT, (II) DISREGARD FEDERAL PRE-EMPTION OF STATE LAW, (III) INCORRECTLY APPLY CIV. R. 12(B)(6) TO A DECLARATORY JUDGMENT ACTION, AND (IV) IMPROPERLY CLAIM THAT DAMAGES ARE NOT RECOVERABLE IN DJA."

{¶14} "III. THE TRIAL COURT ERRED IN GRANTING ATTORNEY MILLIGAN'S MOTION TO DISMISS PURSUANT TO CIV. R. 12(B)(6) WHEN IT FOUND THAT "MR. MILLIGAN ACTED IN GOOD FAITH ON BEHALF OF HIS CLIENTS, AULTMAN HEALTH FOUNDATION AND ITS RELATED ENTITIES, AND THAT HE IS, THEREFORE, IMMUNE FROM SUIT BY [PLAINTIFF] IN THE WITHIN MATTER."

I, II

{¶15} Appellant, in his first two assignments of error, argues that the trial court erred in granting the Motions to Dismiss pursuant to Civ.R. 12(B)(6) filed by appellee Milligan and appellee Aultman Health Foundation.

{¶16} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Board of Commissioners,* 65 Ohio St.3d 545, 1992-Ohio-73, 605

N.E.2d 378. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶17} Appellant, in the case sub judice, filed a declaratory judgment action pursuant to R.C. 2721.03. "[A]ny person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights… are affected by a constitutional provision, statute, rule …may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, …[or] contract… and obtain a declaration of rights, status, or other legal relations under it". R.C. 2721.03. In order to maintain an action for declaratory judgment, a party must demonstrate that a real controversy exists between the parties, that the controversy is justiciable in character, and that speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973). "A trial court may dismiss a complaint for declaratory relief only if no real controversy or justiciable issue exists, or if the declaratory judgment will not terminate the uncertainty or controversy." *Reinbolt v. National Fire Ins. Co. of Hartford,* 158 Ohio App.3d 453, 2004–Ohio–4845, 816 N.E.2d 1083, ¶ 13 (6th Dist.), citing *Fioresi v. State Farm Mut. Auto. Ins. Co.,* 26 Ohio App.3d 203, 499 N.E.2d 5, syllabus (1st Dist.1985).

{¶18} "A real, justiciable controversy is a 'genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13,574 N.E.2d 533 (8th Dist. 1988). The controversy must be a real or actual controversy. See *Burger Brewing Co.,* supra. The resolution of that controversy must confer certain rights or status upon

the litigants. *J.C. Penney Cas. Ins. Co. v. Professionals Ins. Co. of Ohio*, 67 Ohio App.3d 167, 172,586 N.E.2d 222 (6th Dist. 1990). An action will not lie to obtain a judgment which is merely advisory in nature or which answers a moot or abstract question. *Cincinnati Metro. Housing Auth. v. Cincinnati Dist. Council No. 51*, 22 Ohio App.2d 39, 43, 257 N.E.2d 410 (1st Dist. 1969). A court will not indulge in advisory opinions. *Egan v. National Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904, syllabus (1986).

{¶19} Appellant, in his complaint in the case sub judice, stated that he was seeking a declaratory judgment confirming his right to contact and speak with certain of appellee Aultman Health Foundation's non-management personnel. In paragraph 29, he stated that he was seeking "clarification of his legal rights from this Court" as to whether or not there would be a valid "post-hospital-contact lawsuit" against him by appellee Aultman Hospital Foundation if he continued contacting hospital staff without first contacting its counsel. Appellant asked for a declaration from the trial court that he "shall not be in violation of Rule 4.2 of the Ohio Ethics Code, or any other applicable law, statute, order, or ruling, and is not required to seek the permission of consent of legal counsel representing AHF,.." in making contact with Aultman Hospital personnel, Aultman PAG personnel or Aultcare MAP personnel.

{¶20} Initially, we concur with appellees that the word "rule", as used in R.C. 2721.03, does not extend declaratory relief jurisdiction to any rule promulgated by the Ohio Supreme Court with respect to regulating attorneys. "A complaint of misconduct by an attorney for violation of a Disciplinary Rule subjects the attorney to disciplinary action such as reprimand, suspension or disbarment from the practice of law. Jurisdiction is with the Supreme Court of Ohio." *David v. Schwarzwald, Robiner, Wolf & Rock,* 79 Ohio

App.3d 786, 802, 607 N.E.2d 1173, citing *Palmer v. Westmeyer,* 48 Ohio App.3d 296, 298, 549 N.E.2d 1202, 1205 (6th Dist. 1988).

{¶21} We also concur with appellees that appellant is seeking an advisory opinion and that there is no actual controversy. As noted by appellee Aultman Health Foundation, appellant "is really only seeking an Advisory Opinion from this Court on the interpretation of the Ohio Rules of Professional Conduct." Appellant, an attorney, is seeking a declaration from the trial court that he would not be violating Professional Rule of Conduct 4.2 if, in the future, he conducts ex parte interviews of non-management personnel of appellee Aultman Health Foundation.  He is seeking clarification as to whether or not there would be a valid post-hospital-contact lawsuit" against him by appellee Aultman Hospital Foundation if he continued contacting hospital staff without first contacting its counsel. We find that appellant's fear of possible future litigation is not sufficient to create a real justiciable case or controversy and that appellant is seeking an advisory opinion.

{¶22} Moreover, any determination about Professional Conduct Rule 4.2 would be based on hypothetical ex-parte interviews with appellant Aultman's employees and would not resolve any controversy because, as noted by appellee Milligan, how appellant "might attempt an ex-parte interview and how an Aultman employee would respond is unknown."

{¶23} While appellant's complaint also seeks punitive damages, costs and/or attorney's fees under the Declaratory Judgment Act. A punitive damages claim is a derivative action that must be dismissed where the primary claim is subject to summary judgment. See *Vickers v. Wren Industries, Inc.,* 2nd Dist. Montgomery No. 20914, 2005–

Ohio–3656, at ¶¶ 63–65. Because appellant's declaratory judgment action was dismissed by the trial court, these secondary damage claims also fail.

**{¶24}** Appellant's first and second assignments of error are, therefore, overruled.

III

**{¶25}** Appellant, in his third assignment of error, argues that the trial court erred in granting appellee Milligan's Motion to Dismiss pursuant to Civ.R. 12(B)(6).

**{¶26}** In the case sub judice, the trial court, in its November 23, 2015 Order, granted appellee Milligan's Motion to Dismiss pursuant to Civ.R. 12(B)(6), finding that he acted in good faith on behalf of his clients and was, therefore, entitled to immunity from suit by appellant in this matter.

**{¶27}** The genesis of appellant's declaratory judgment complaint was the submission by appellant of a "Grievance" with AultCare MAP regarding the care of his father, Alexander Armatas, via his father's right under his MAP to file complaints and obtain answers regarding his medical care while at Aultman Hospital, as explained by appellant in his complaint at ¶ 12-14:

12. As an enrollee in "Primetime Health Care Plan-Timken Company, as offered by AultCare Insurance Co., a Medicare Advantage Plan" (hereinafter, the "AultCare MAP"), Alexander had, as do all Medicare and Medicare Advantage Plan ("MAP") enrollees, certain contractual***and federally-granted rights***to file administrative "complaints" with his MAP and receive answers regarding his medical care while at Aultman.

13. Federal Medicare Regulations as set forth in Chapter 13, Section 10.4.1 of the *Medicare Managed Care Manual***also provide that

in the event any MAP patient is incapacitated, those rights flow automatically to his next-of-kin and/or anyone whom the patient had previously designated as his Power of Attorney.

14. On or about November 22, 2014, acting in his capacity as Alexander's only child and pursuant to a Power of Attorney executed several years earlier, Plaintiff prepared a 5-page, single-spaced "Grievance" outlining multiple concerns he had regarding both Alexander's medical care while hospitalized and the way Plaintiff and his mother were treated by certain Aultman personnel during this same period of time. (References to Exhibits omitted.)

**{¶28}** As a result of the Grievance and other acts of appellant attempting to contact Aultman Hospital personnel, appellee Milligan wrote a letter dated June 9, 2015 to appellant, informing appellant that he represented Aultman Health Foundation and its related entities, including Aultman Hospital and AultCare. The letter stated, in relevant part, as follows**:**

On May 29, 2015, Attorney Mark Rose, Sr. Vice President of Legal Affairs at Aultman Health Foundation requested that you cease communication with Aultman Health Foundation and its various related entities. You have represented yourself not only to be the son of Alexander E. Armadas but also his legal representative.

Despite this request from Mr. Rose you continue to contact individuals associated with Aultman Health Foundation, Aultman Hospital and AultCare. That is unacceptable.

Any communications concerning Aultman Health Foundation and its related entities, Aultman Hospital and AultCare concerning your father should be through me.

Further communication with my clients is harassment and will be dealt with appropriately.

**{¶29}** Appellant responded to appellee Milligan via a letter dated June 18, 2015, informing him that Professional Conduct Rule 4.2 did not apply to appellant in a personal matter related to his own father. Appellant submitted a copy of the letter to the SCBA who referred the matter to the ODC. By letter dated August 19, 2015, the ODC concluded that appellee Milligan's conduct did not violate any of the ethics codes.

**{¶30}** Thereafter, appellant filed the declaratory judgment action and at the outset, explained the following:

Pursuant to Civ. R. 57, Plaintiff seeks a Declaratory Judgment confirming his rights to contact and speak with certain non-management personnel affiliated with Defendant AHF.

Pursuant to Civ. R. 65(B), Plaintiff seeks a preliminary and permanent injunctive relief prohibiting Defendants from interfering with Plaintiff's aforesaid rights.

**{¶31}** Appellee filed a Civ.R. 12(B)(6) motion on October 15, 2015, wherein he placed squarely before this court the uncontested issue that at all times, he was working on behalf of his client(s), Aultman Health Foundation and its entities, and was therefore entitled to absolute immunity.

**{¶32}** The issue for determination is whether the trial court erred in dismissing appellee Milligan from the declaratory judgment action based upon appellee Milligan's privilege. It is clear that Ohio recognizes an absolute privilege in judicial proceedings. *Surace v. Wuliger,* 25 Ohio St.3d 229, 495 N.E.2d 939 (1996). In *Theiss v. Scherer,* 396 F.2d 646 (6th Cir.1968), 649-650, the United States Court of Appeals for the Sixth Circuit explained the following**:**

> The rule of absolute privilege for relevant statements made by one attorney to another during the course of and in relation to judicial proceedings in which they are participating as counsel rests on solid basis. An attorney is an officer of the court and is subject to disciplinary action by the court and by his bar association. The rights of clients should not be imperiled by subjecting their attorneys to the fear of suits for libel or slander.

**{¶33}** The issue thus becomes whether appellant's Grievance was in fact a "judicial proceeding." The "proceeding" initiated by appellant was an administrative proceeding which was quasi-judicial and which may or may not have resulted in litigation.

**{¶34}** As is demonstrated by appellant's declaratory judgment complaint, appellee Milligan's actions are rooted in the Grievance filed against his client(s). The June 9, 2015 letter sent by appellee Milligan to appellant established there was a controversy and possible litigation, and appellee Milligan was speaking on behalf of and in defense of his client(s). We conclude it is clear that litigation was possible, even though at the time, the matter was only in a quasi-judicial setting, and the content of appellee Milligan's letter was substantially related to the Grievance against his client(s).

**{¶35}** Appellant also requested punitive damages in relation to his dealings with appellee Milligan. Appellant did not make a specific allegation of malice relative to such appellee. Also, the complaint is void of any cause of action that would give rise to compensatory or punitive damages. *Bishop v. Grdina,* 20 Ohio St.3d 26, 485 N.E.2d 704 (1985), superseded by rule on other grounds.

**{¶36}** Upon review, we concur with the trial court's determination that appellee Milligan acted in "good faith" on behalf of his client(s) and was subject to absolute privilege. We find that the trial court did not err in dismissing appellee Milligan from the declaratory judgment action.

**{¶37}** Appellant's third assignment of error is, therefore, overruled.

**{¶38}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Gwin, J. concur.